UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| Laura Skzynear, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>Upfield US Inc.,<br><br>Defendant | :23-cv-<br><br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Upfield US Inc. ("Defendant") manufactures, labels, markets, and sells Plant Butter vegetable oil spreads made with alternative vegetable oils, i.e., "Made With Olive Oil" with pictures of olives with green-themed packaging, under its Country Crock brand ("Product").



**I.     VEGETABLE OIL BLENDS**

2. Vegetable oil blends are emulsions of fat and water, used in food for flavoring, baking, and cooking.

3. These oils typically include canola oil, palm oil, and soybean oil.

4. Where the fat content of such blends is equal to or exceeds 80 percent, such foods are called margarine, while less than this amount they are known as spreads.

5. Vegetable oil blends are often compared with butter.

6. According to the USDA, consumption of vegetable oil blends recently hit its lowest level since 1942, while butter has reached its highest level in fifty years.

7. This is due to several factors.

8. First, according to research firm Mintel, "consumers [are] increasingly turn[ing] to butter over margarine/spreads for its natural appeal," and a "preference for less processed foods."

9. Butter is made with natural ingredients like cream, through churning cow's milk, without chemicals or additives.

10. In contrast, vegetable oils are heavily refined in the presence of chemical catalysts such as nickel and cadmium.

11. Second, consumers are more aware of the healthier profile of butter compared to vegetable oil alternatives.

12. Butter contains heart healthier fats, while vegetable oils contain harmful trans fats, a result of hydrogenation and interesterification.

13. Butter contains calcium and vitamins A and D, while vegetable oils have no comparable nutritional value due to the processing needed to render them palatable.

14. Third, vegetable oil spreads are considered ultra-processed foods ("UPF"), frowned upon by nutrition authorities and public health bodies.

15. To counter this decline of vegetable oil spreads, market research firms have promoted adding valued oils to traditional vegetable oil-based foods.

16. Olive oil is extracted from the pulp of olives without additives or harsh processing.

17. Olive oil is valued for its versatility, taste, and nutritional value.

18. The high smoke point of olive oil means it is useful in cooking.

19. Whereas vegetable oils have no flavor or aroma, olive oil is known for its earthy and grassy taste.

20. Olive oil has high levels of heart-healthy fats which help control cholesterol.

21. Olive oil contains immunity-promoting antioxidants, which help slow down the aging process.

## II. "MADE WITH OLIVE OIL"

22. Even though the Product claims to be "Made With Olive Oil" with pictures of olives with green-themed packaging, it contains a de minimis amount of olive oil.

**INGREDIENTS:** BLEND OF PLANT-BASED OILS (PALM KERNEL, CANOLA, PALM FRUIT, AND OLIVE OIL), WATER, SALT, PEA PROTEIN, SUNFLOWER LECITHIN, CITRIC ACID, NATURAL FLAVOR, VITAMIN A PALMITATE, BETA CAROTENE (COLOR)

23. The ingredient list shows olive oil is the smallest part of the vegetable oil blend, less than palm kernel oil, canola oil, and palm fruit oil.

24. Federal and identical state regulations require ingredients to be listed in order of predominance by weight.

25. This principle applies here because the vegetable oils constitute the Product's predominant ingredient, which means the parenthetical listing reflects the descending order of predominance by weight for each oil. 21 C.F.R. § 101.4(b)(14).

26. Consumers are misled because they expect "Made With Olive Oil" with

pictures of olives to mean the Product contains more than a relatively de minimis amount of this valued ingredient.

27. The amount of olive oil is insufficient to confer health it is known for.

28. The Product contains other false and misleading representations and omissions.

## JURISDICTION AND VENUE

29. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

30. The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

31. Plaintiff is a citizen of Florida.

32. Defendant is a Delaware corporation with a principal place of business in New Jersey.

33. The class of persons Plaintiff seeks to represent includes persons who are citizens of a different state from which Defendant is a citizen.

34. The members of the proposed class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here in hundreds of locations, including grocery stores, big box stores, convenience stores, and/or online, in Florida.

35. Venue is in this District with assignment to the Tampa Division because

Plaintiff resides in this District and a substantial part of the events or omissions giving rise to these claims occurred in Sarasota County, including Plaintiff's purchase, consumption and/or use of the Product, and awareness and/or experiences of and with the issues described here.

## PARTIES

36. Plaintiff Laura Skzynear is a citizen of Venice, Sarasota County, Florida.

37. Defendant Upfield US Inc. is a Delaware corporation with a principal place of business in Hackensack, Bergen County, New Jersey.

38. Plaintiff read and relied on the statement and pictures about the promoted ingredient, i.e., "Made With Olive Oil" and the pictures of olives, to believe the Product was made with a significant and/or predominant amount of olive oil.

39. Plaintiff expected more olive oil than other vegetable oil ingredients.

40. Plaintiff relied on the words, terms coloring, descriptions, layout, packaging, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

41. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Publix in Venice, Florida between July 2020 and May 2023, and/or among other times.

42. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $3.99 for 10.5 OZ, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

43. Plaintiff bought the Product at or exceeding the above-referenced price.

44. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

45. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

46. Plaintiff paid more for the Product than she would have paid had she known the representations were false and misleading, as she would not have bought it or paid less.

47. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance its representations are consistent with its composition.

48. Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar vegetable oil spreads, because she is unsure whether those representations are truthful.

49. If Defendant's labeling were to be truthful, Plaintiff could adequately rely on the labeling of other vegetable oil spreads.

## CLASS ALLEGATIONS

50. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following class:

> **Florida Class:** All persons in the State of Florida who purchased the Product during the statutes of limitations for each cause of action alleged.

51. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

52. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

53. Plaintiff is an adequate representative because her interests do not conflict with other members.

54. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

55. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

56. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

57. Plaintiff seeks class-wide injunctive relief because the practices continue.

## CAUSES OF ACTION

### COUNT I

### Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.*

58. Plaintiff incorporates by reference preceding paragraphs 1-28.

59. Plaintiff brings this claim on her own behalf and on behalf of each member of the Florida Class.

60. Defendant violated and continues to violate Florida's Deceptive and Unfair Trade Practices Act by engaging in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of its business.

61. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions, that it was made with a significant and/or predominant amount of the promoted ingredient, olive oil, as opposed to mainly palm and canola oils.

62. The material misstatements and omissions alleged herein constitute

9

deceptive and unfair trade practices, in that they were intended to and did deceive Plaintiff and the general public into believing that the Product was made with a significant and/or predominant amount of the promoted ingredient, olive oil, as opposed to mainly palm and canola oils.

63. Plaintiff and class members relied upon these representations and omissions of any front label disclosure about olive oil in deciding to purchase the Product.

64. Plaintiff's reliance was reasonable because of Defendant's reputation as a trusted and reliable company, known for its high-quality products, honestly marketed to consumers.

65. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

66. Defendant's conduct offends established public policy and is immoral, unethical, oppressive, and unscrupulous to consumers.

67. Plaintiff and class members are entitled to damages in an amount to be proven at trial.

68. Defendant should also be ordered to cease its deceptive advertising and should be made to engage in a corrective advertising campaign to inform consumers that the Product was not made with a significant and/or predominant amount of the promoted ingredient, olive oil, but rather with mainly palm and canola oils.

## COUNT II

### False and Misleading Adverting, Fla. Stat. § 817.41

69. Plaintiff incorporates by reference preceding paragraphs 1-28.

70. Plaintiff brings this claim on her own behalf and on behalf of each member of the Florida Class.

71. Defendant made misrepresentations and omissions of material fact, that the Product was made with a significant and/or predominant amount of the promoted ingredient, olive oil, as opposed to mainly palm and canola oils, through its advertisements and marketing, through various forms of media, product descriptions, and targeted digital advertising.

72. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

73. Defendant knew that these statements were false.

74. Defendant intended for consumers to rely on its false statements for the purpose of selling the Product.

75. Plaintiff and class members did in fact rely upon these statements.

76. Reliance was reasonable and justified because of Defendant's reputation as a trusted and reliable company, known for its high-quality products, honestly marketed to consumers.

77. As a result of Defendant's misrepresentations, Plaintiff and class members suffered damages in the amount paid for the Product.

78. Plaintiff and class members are entitled to damages and injunctive relief as set forth above.

## COUNT III

### Breaches of Express Warranty, Implied Warranty of Merchantability/Fitness for a Particular Purpose and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

79. Plaintiff incorporates by reference preceding paragraphs 1-28.

80. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it was made with a significant and/or predominant amount of the promoted ingredient, olive oil, as opposed to mainly palm and canola oils.

81. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

82. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

83. The representations were conveyed in writing and promised the Product would be defect-free, and Plaintiff understood this meant that it was made with a

significant and/or predominant amount of the promoted ingredient, olive oil, as opposed to mainly palm and canola oils.

84. Defendant affirmed and promised that the Product was made with a significant and/or predominant amount of the promoted ingredient, olive oil, as opposed to mainly palm and canola oils.

85. Defendant described the Product so Plaintiff and consumers believed it was made with a significant and/or predominant amount of the promoted ingredient, olive oil, as opposed to mainly palm and canola oils, which became part of the basis of the bargain that it would conform to its affirmations and promises.

86. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

87. This duty is based on Defendant's outsized role in the market for this type of product, custodian of Country Crock, a trusted brand in the realm of vegetable oil spreads.

88. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

89. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the express and implied warranties associated with the Product.

90. Defendant received notice and should have been aware of these issues

due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

91. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

92. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it was made with a significant and/or predominant amount of the promoted ingredient, olive oil, as opposed to mainly palm and canola oils.

93. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it was made with a significant and/or predominant amount of the promoted ingredient, olive oil, as opposed to mainly palm and canola oils, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

## COUNT IV

### Negligent Misrepresentation

94. Plaintiff incorporates by reference preceding paragraphs 1-28.

95. Defendant had a duty to truthfully represent the Product, which it breached.

96. This duty is based on Defendant's position, holding itself out as having special knowledge and experience in this area, as custodian of Country Crock, a trusted brand in the realm of vegetable oil spreads.

97. Defendant's representations and omissions regarding the Product went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first that it has been known for.

98. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

99. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

100. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, her purchase of the Product.

### COUNT V

### Fraud
### (Fed. R. Civ. P. 9(b) Allegations)

101. Plaintiff incorporates by reference preceding paragraphs 1-28.

102. Defendant misrepresented that the Product was made with a significant and/or predominant amount of the promoted ingredient, olive oil, as opposed to

mainly palm and canola oils.

103. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of this falsity and deception, through statements and omissions.

104. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

105. To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

106. WHO: Defendant, Upfield US Inc., made material misrepresentations and/or omissions of fact in its advertising and marketing of the Product by representing that the Product was made with a significant and/or predominant amount of the promoted ingredient, olive oil, as opposed to mainly palm and canola oils.

107. WHAT: Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Product was made with a significant and/or predominant amount of the promoted ingredient, olive oil, as opposed to mainly palm and canola oils.

108. Defendant omitted that the Product was not made with a significant

and/or predominant amount of the promoted ingredient, olive oil, but rather with mainly palm and canola oils.

109. Defendant knew or should have known this information was material to all reasonable consumers and impacts consumers' purchasing decisions.

110. Yet, Defendant has and continues to represent that the Product was made with a significant and/or predominant amount of the promoted ingredient, olive oil, as opposed to mainly palm and canola oils.

111. WHEN: Defendant made material misrepresentations and/or omissions detailed herein, including that the Product was made with a significant and/or predominant amount of the promoted ingredient, olive oil, as opposed to mainly palm and canola oils, continuously throughout the applicable Class period(s) and through the filing of this Complaint.

112. WHERE: Defendant's material misrepresentations and omissions, that the Product was made with a significant and/or predominant amount of the promoted ingredient, olive oil, as opposed to mainly palm and canola oils, were made in the advertising and marketing of the Product, on the front of the packaging which all consumers buying it will inevitably see and take notice of.

113. This labeling is identical regardless of whether the Product is sold in tubs or sticks, from grocery stores, big box stores, convenience stores, and/or online.

114. HOW: Defendant made written and visual misrepresentations and

omissions in the advertising and marketing of the Product, that it was made with a significant and/or predominant amount of the promoted ingredient, olive oil, as opposed to mainly palm and canola oils.

115. As such, Defendant's representations are false and misleading.

116. And as discussed in detail throughout this Complaint, Plaintiff and class members read and relied on Defendant's representations and omissions before purchasing the Product.

117. WHY: Defendant misrepresented that the Product was made with a significant and/or predominant amount of the promoted ingredient, olive oil, as opposed to mainly palm and canola oils, for the express purpose of inducing Plaintiff and class members to purchase the Product at a substantial price premium.

118. As such, Defendant profited by selling the misrepresented Product to thousands of consumers throughout the State of Florida.

## COUNT VI

### Unjust Enrichment

119. Plaintiff incorporates by reference preceding paragraphs 1-28.

120. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## JURY DEMAND AND PRAYER FOR RELIEF

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Awarding monetary, statutory, and/or punitive damages pursuant to applicable laws;

4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5. Other and further relief as the Court deems just and proper.

Dated:   June 7, 2023

Respectfully submitted,

/s/ *William Wright*
The Wright Law Office, P.A.
515 N Flagler Dr Ste P300
West Palm Beach FL 33401
(561) 514-0904
willwright@wrightlawoffice.com

*Lead Counsel for Plaintiff*

Sheehan & Associates, P.C.
Spencer Sheehan*
60 Cuttermill Rd Ste 412

Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

*Pro Hac Vice* Application Forthcoming